UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRANK P. RAGUSA, JR.

VERSUS

LOUISIANA GUARANTY
INSURANCE ASSOCIATION, ET AL.

CIVIL ACTION

NO. 21-1971

SECTION: "J"(5)

## ORDER AND REASONS

Before the Court are nine motions for summary judgment **(Rec. Docs. 359, 338, 382, 349, 364, 346, 363, 353, 342)** filed by various Defendants in this case. The motions are opposed by Plaintiff, and four of the motions are also opposed by cross-claim Plaintiff, Huntington Ingalls, Inc. Each of the movants also filed reply memoranda. The Court considers each of the motions and legal memoranda in turn, as well as the record and applicable law.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons. On July 16, 2021, Frank P. Ragusa, Jr. filed suit in Civil District Court for the Parish of Orleans, asserting Louisiana negligence and intentional tort claims for asbestos exposure against numerous defendants. Huntington Ingalls, Inc. ("Avondale") removed the case to this Court on October 26, 2021.

## DISCUSSION

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Each of the motions summarized below seeks dismissal of Ragusa's claims

against defendants who owned premises where Ragusa was allegedly exposed to asbestos while he worked for B&G Crane from 1989 through 2017.

Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)). The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004). When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 1 Cir. 2005) (citing Vodanovich, 969 So. 2d at 932).

"Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *Labarre v. Bienville Auto Parts, Inc.*, No. 21-89, 2022 WL 293250, at *3 (E.D. La. Feb. 1, 2022) (citing *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 4 Cir. 2009)). Thus, as the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for

summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)). "Evidence of the mere physical presence of asbestos-containing materials at a particular job site is insufficient to defeat an employer's or premises owner's summary judgment motion," so a plaintiff must submit specific evidence showing potential exposure to asbestos containing materials for which the defendant is responsible to defeat their motion for summary judgment. *Steib v. Lamorak Ins. Co.*, 2020-0424, p. 6 (La. App. 4 Cir. 2/3/21), *writ denied,* 2021-00453 (La. 6/8/21), 317 So. 3d 326.

The same causation standard (the substantial factor test) is used in cases involving product liability defendants and premises owner defendants. *Thomas v. A.P. Green Indus., Inc.*, 05-1064, pp. 22-23 (La. App. 4 Cir. 5/31/06), 933 So.2d 843, 860 (citing *Zimko v. American Cyanamid*, 2003-0658, p. 26 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 485, *writ denied*, 2005-2102 (La. 3/17/06), 925 So.2d 538).

## PREMISES DEFENDANTS' MOTIONS

### 1. Pharmacia's motion for partial summary judgment (Rec. Doc. 359)

Pharmacia LLC ("Pharmacia") moves for partial summary judgment seeking dismissal of Ragusa's claims for asbestos exposure related to his exposure to thermal insulation at its Monsanto industrial plant in Luling, Louisiana. (Rec. Doc. 359-5, at 1). Pharmacia argues that its expert's testimony establishes that the insulation handled near Ragusa at Monsanto "was almost certainly asbestos-free," such that the

Court should dismiss Ragusa's claims based on asbestos exposure from insulation. *Id.* at 2. From the outset, almost-certainty does not justify summary judgment dismissal of exposure claims.

Ragusa testified that he worked at Monsanto "too many times to try to say" through a contract between Monsanto and his employer, B&G Crane. (Ragusa Deposition, Rec. Doc. 463-3, at 12). Pharmacia states that Ragusa only began working at Monsanto in 1990 or 1991, but it stopped installing asbestos-containing thermal insulation in 1973. (Rec. Doc. 359-5, at 4-5). Pharmacia also argues that more than a decade before Ragusa worked at Monsanto, it instituted policies where insulation could not be removed without first determining whether it contained asbestos and requiring multiple safety precautions. *Id.* at 6. Because Ragusa did not observe these procedures proves "it was highly likely that the insulation he saw removed or handled at Monsanto was asbestos free." *Id.* However, in his deposition, Ragusa stated that, while he was at the Monsanto facility, he saw old insulation being taken off, and he was exposed to dust, which he inhaled. (Ragusa Deposition, Rec. Doc. 463-3, at 13-15).

Ragusa's deposition testimony is evidence sufficient to create a material fact issue on whether he was exposed to the previously-installed asbestos-containing insulation at Pharmacia's facility. It is enough that he points to evidence on which a reasonable jury could conclude that he inhaled Pharmacia's asbestos fibers, which Ragusa has done here. *See Williams*, 23 F.4th at 512.

For the foregoing reasons, a material fact issue remains on exposure, so Pharmacia's motion for partial summary judgment **(Rec. Doc. 359)** is **DENIED.**

**2. Legacy Vulcan's motion for partial summary judgment regarding insulation exposure (Rec. Doc. 338)**

Legacy Vulcan, LLC ("Vulcan") moves for summary judgment on Ragusa's alleged exposure to asbestos-containing insulation while on a Vulcan Premises. (Rec. Doc. 338-1, at 2). Ragusa testified that he worked at the Vulcan facility as a crane operator for B&G in the 1990s through the 2000s. *Id.* at 4. He also testified that he could not testify that he was exposed to asbestos at Vulcan from any insulation. *Id.* Thus, Vulcan argues, summary judgment is appropriate on the issue of Ragusa's exposure to asbestos-containing insulation at Vulcan.

In opposition, Ragusa points to his deposition testimony that, while working at Vulcan, he was close enough to insultation removal work that he was able to breathe the insulation dust regularly. (Ragusa Deposition, Rec. Doc. 470-3, at 14). Ragusa also notes that Leon Steckley, the Plant Manager at the Vulcan Geismar facility and Rodney Gremillion, a Vulcan Corporate representative, both confirmed that Vulcan used asbestos insulation to insulate equipment, and the insulation was still present on equipment in the 19890s. (Steckley Deposition, Rec. Doc. 470-5, at 6-7; Gremillion Deposition, Rec. Doc. 470-4, at 3-4). Ragusa also notes that his industrial hygiene expert opined that he was exposed to asbestos fibers while working at Vulcan and that no dust controls were utilized. (Baril Expert Report, Rec. Doc. 470-7, at 32-33). Although Ragusa did not testify to the exact age of the insulation to

which he was exposed at Vulcan, his testimony that he regularly breathed dust from insulation removal work at the Vulcan plant in the 1990s, combined with the testimony that Vulcan used asbestos-containing insulation in as late as the 1980s could be construed by a jury that it is more likely than not that he inhaled asbestos fibers from insulation at Vulcan. Thus, the Court finds that Ragusa has presented sufficient evidence to raise a genuine issue of fact as to whether he was exposed to asbestos-containing insulation at Vulcan.

Ragusa raised a genuine issue as to Ragusa's exposure to asbestos in insulation at the Vulcan plant, so Vulcan's motion for summary judgment **(Rec. Doc. 338)** is **DENIED.**

### 3. Sygenta's motion for summary judgment (Rec. Doc. 382)

Syngenta Crop Protection, LLC ("Syngenta") is a successor in interest to Ciba-Geigy Corporation. Syngenta moves for summary judgment, seeking dismissal of Ragusa's claims on the grounds that Ragusa cannot produce evidence demonstrating he was exposed to asbestos-containing insulation at the Ciba-Geigy plant nor evidence establishing he saw pipefitters removing valves there containing asbestos. (Rec. Doc. 381-1). Ragusa worked at the Ciba-Geigy plant on two different jobs in the early nineties for 5 days and then 3-4 days. The first job involved operating a crane provided by his employer B&G Crane service, to move and install scaffolding, and he did not handle any insulation or gasket materials or work around any insulators or pipefitters. The second job involved again operating a crane, but saw new insulation being installed on pipes and pipefitter changing out gaskets. He did not know who

made the insulation or if any of the insulation contained asbestos. He did not know what type of gaskets were being removed or installed.

Sygenta argues that Ragusa lacks evidence that he had significant exposure to asbestos-containing insulation or gaskets at the Ciba-Geigy plant. (Rec. Doc. 382-1, at 10-12). In support of its assertion, Sygenta points to Plaintiff's admissions in his deposition that he did not personally handle any insulation, nor did he know what type of lines he was removing, the temperature of the pipes, the material flowing through the pipes, when the insulation that was removed was originally installed, who made any of the old insulation, nor whether the insulation materials he saw at the plant contained asbestos. (Deposition of Frank Ragusa, Jr., at 150-52; 172-75). It also contends that Ragusa could not identify the model or manufacturer of the gaskets he saw pipefitters removing, nor a contract or specifications for the gasket work he observed. *Id.* at 163-65.

Avondale and Ragusa both oppose the motion by arguing there are genuine issues of material fact as to whether Ragusa was exposed to asbestos in insulation and gaskets at the Ciba-Geigy plant and whether such exposures were a substantial contributing cause of mesothelioma. (Rec. Docs. 433, 466).  Avondale points to Ragusa's testimony that he removed pipes and valves with a cherry picker and that there was still some insulation on the pipes when he removed them, as well as Ragusa's testimony that he knew for a fact that the Garlock 900 gasket materials he observed contained asbestos because he saw fibers in the gaskets. (Deposition of Frank Ragusa, Jr., at 150, 166). Ragusa also testified that he breathed dust while the

7

gaskets were scraped and wire brushed, and Ciba-Geigy's gasket specifications confirm that asbestos-containing gaskets were used throughout the plant. *Id.* at 44-46. Additionally, two of Ragusa's experts testified that Ragusa was exposed to asbestos while working at Ciba-Geigy, and that those exposures were substantial contributing factors to his development of mesothelioma. (Deposition of Gerard Baril, at 56-57; Deposition for Dr. Terry Kraus, at 96-97).

Ragusa and Avondale have raised a genuine issue as to Ragusa's exposure to asbestos in insulation and gaskets at the Ciba-Geigy plant, so Sygenta's motion for summary judgment **(Rec. Doc. 382)** is **DENIED.**

### 4. **Marathon's motion for summary judgment (Rec. Doc. 349)**

Marathon Petroleum Company LP ("Marathon") moves for summary judgment, arguing that Ragusa cannot establish (1) exposure to asbestos at Marathon's Garyville refinery and (2) specifical medical causation as to marathon. (Rec. Doc. 349-1, at 1). Ragusa worked as a crane operator at the Garyville refinery for two to three months in 1994 or 1995 and a handful of jobs lasting three to five days in 1991-1994. *Id.* at 3. Ragusa testified that, during the longer job in 1994 or 1995, his work took place "in front of the units" near Airline Highway, and he did not see anyone removing or installing gaskets or insulation. *Id.* (citing Ragusa Deposition Vol 2, Rec. Doc. 349-8, at 7). However, for the jobs between 1991-1994, he testified that he was "right there" near insulators and pipefitters changing Garlock 900 gaskets and wire brushing the gaskets, such that he breathed the dust. *Id.* (citing Ragusa Deposition Vol 1, Rec. Doc. 349-7, at 15).

Marathon argues that Ragusa cannot establish his exposure to asbestos at Marathon because his testimony "raises significant questions and provides inadequate information to establish" exposure. *Id.* at 9. Specifically, Marathon points to the facts to show that Ragusa cannot establish exposure: Ragusa was a crane operator rather than a pipefitter or insulator, Ragusa's exposures occurred during a handful of short jobs in 1991-1994, Ragusa never personally worked with asbestos-containing gaskets, and Ragusa did not personally know if or when Garlock 900s stopped containing asbestos. *Id.* at 9-10.

Avondale notes in opposition to Marathon's motion that Marathon's corporate representative, Roger Damian Gautreau, testified that Marathon removed thousands of pounds of asbestos containing materials including gaskets and insulation from its Garyville facility in 1997 to 1998. (Rec. Doc. 428, at 3) (citing Gautreau Deposition, Rec. Doc. 428-6, at 11-21). Ragusa's industrial hygiene expert also opined that Ragusa was exposed to asbestos containing gaskets and insulation at Marathon's facility, and Marathon's failure to protect him from asbestos-containing dust significantly increased his risk of developing mesothelioma. (Baril Report, Rec. Doc. 428-9, at 24, 33). The Court finds that Ragusa's testimony that he inhaled dust from gaskets being removed and replaced while working at the Marathon facility, the fact that thousands of pounds of asbestos were removed from the facility shortly after, as well as Baril's expert opinion that Ragusa was exposed to asbestos at Marathon's Garyville facility creates a genuine issue of material fact on the exposure element.

Marathon also argues that Ragusa has no expert opinion to establish that any exposure at Marathon was a substantial contributing cause of his illness. (Rec. Doc. 349-1, at 10). Specifically, Marathon contends that Ragusa's medical causation expert, Dr. Stephen Terry Kraus, MD, bases his qualitative analysis on the "every exposure above background theory," meaning any asbestos exposure above background is a substantial contributing cause of an asbestos claimant's mesothelioma, so his opinions should not be considered on summary judgment. *Id.* at 10.

Louisiana courts require the claimant in an asbestos case to show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury. *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 168 So. 3d 556, 565-66 (La. App. 1 Cir.2014). "In meeting this burden of proof, the plaintiff is not required to prove the quantitative level of exposure, i.e., the exact or cumulative dose of asbestos.... Rather, a qualitative evaluation of the exposures to asbestos, i.e., the level, frequency, nature, proximity, and duration of the exposures at issue, can sufficiently prove causation." *Id.* Qualitative evaluation can include consideration of a number of factors such as "the nature of exposure, the level of exposure and the duration of exposure, whether a product gives off respirable asbestos fibers, whether a person was close or far from the source of fiber released, how frequently the exposure took place, how long the exposure lasted, whether engineering or other methods of dust control were in place, whether respiratory protection was used, the chemistry and physics of asbestos fibers, the

pathophysiology of breathing; the movement of asbestos fibers in the lung, the molecular pathology of tumor development, and other scientific disciplines." *Id.* at 569.

Dr. Kraus testified that he reviewed Ragusa's deposition testimony and medical records, imaging, Ragusa's industrial hygiene expert's reports, Plaintiff's materials/microscopy expert, and scientific and medical literature to perform a qualitative assessment of Ragusa's asbestos exposure. (Kraus Deposition, Rec. Doc. 239-9, at 6-7). Marathon argues that Dr. Kraus's attribution of specific causation to Marathon is "nothing more than speculation," because Dr. Kraus did not rely on Ragusa's testimony that he did not handle gaskets himself; did not review Marathon corporate documents, corporate depositions, invoices, purchase orders, or contracts; and did not consider the timeframe that Plaintiff worked at Marathon and how much time he was near pipefitters working with gaskets versus time in the cab of his crane. (Rec. Doc. 349-1, at 14).

In 2015, the undersigned excluded Dr. Kraus's specific causation opinions in a case because, in that case, his opinions were an unreliable product of the "every exposure above the background" theory. *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556 (E.D. La. 2015). In that case, this Court found that Dr. Kraus did not rely on a sufficient qualitative evaluation of the plaintiff's history of asbestos exposures because Dr. Kraus simply testified that "if someone develops malignant mesothelioma and they have an asbestos exposure, that asbestos exposure has caused the malignant mesothelioma." *Id.* at 565. Notably, when asked whether,

by including all exposures above background, Dr. Kraus would be including exposures that, in fact, did not cause the disease, Dr. Kraus answered "who knows? I can't answer that question of which ones are causative and which ones are not.... All I can say is they are all causative. Every incidence of asbestos exposure is causative." *Id.* The Court found that this reasoning simply recited the "every exposure" theory and did not provide a specific causation opinion that the plaintiff's exposure to a particular defendant's product was a cause of her mesothelioma, so Kraus's specific causation opinions were excluded. *Id.*

In this case, however, Dr. Kraus was specifically asked whether he conducted a qualitative cumulative assessment of Ragusa's exposure. (Kraus Deposition, Rec. Doc. 479-15, at 6). After answering affirmatively, he listed the factors he considered when conducting the qualitative assessment, including

> . . .radiologists' CAT scans, x-rays, PET scans, the pathology, the information that I would glean from industrial hygienists, and the literature available to me. So it's a question of everything. And then coming up with what I consider to be. . . whether or not the patient had asbestos exposure, which I think we've done, and also whether or not that would or could result in malignant mesothelioma, which I've done.

*Id.* Further, upon direct questioning regarding whether he agreed that "all significant above background exposures to respirable asbestos fibers can be considered a substantial contributing cause for the development of mesothelioma," Kraus did not answer affirmatively. *Id.* at 8. He also added that,

> . . it's a question of more than that. It's also a question of my evaluation, which has again to do with the art of medicine, which would be my own personal experience, the journal literature, as well as Mr. Ragusa's history, and also where he worked. So all of those are substantial contributing factors. It's not just one -- it's not just one. So it's a combination of all of that, plus taking into

account Dr. Millette and Mr. Baril's industrial hygiene factors, and also, as I said, the literature.

*Id.* Finally, Dr. Kraus testified that, taking into account Mr. Ragusa's testimony, the reports of Ragusa's experts, and his own review of the scientific and medical literature available to him, Ragusa's exposures to asbestos at the Marathon facility were a substantial contributing cause of his development of mesothelioma. *Id.* at 9. Considering the variety of factors Dr. Kraus considered in his conducting his qualitative evaluation of Ragusa's exposures and his response seemingly rejecting the "every exposure" theory of causation, the Court finds no need to reject his specific causation testimony in this case. The Court also finds that his testimony raises a genuine issue of material fact on causation.

Ragusa and Avondale have raised genuine issues as to Ragusa's exposure to asbestos at the Marathon facility as well as causation, so Marathon's motion for summary judgment **(Rec. Doc. 349)** is **DENIED.**

## 5. Murphy Oil's motion for summary judgment (Rec. Doc. 364)

Murphy Oil USA, Inc. ("Murphy") moves for summary judgment seeking dismissal of Ragusa's claims against it because Plaintiff cannot meet his burden of proof that his alleged exposure to asbestos at the Murphy refinery was a substantial contributing factor of his mesothelioma. (Rec. Doc. 364-1, at 1). At Murphy Oil, Ragusa removed hot pipe and valves and worked around insulators pipefitters removing Garlock 900 gaskets with scrapers and wire brushes. (Deposition of Frank Ragusa, Jr., at 74-77). These processes created dust, which he breathed. *Id.*

Murphy notes that its industrial hygienist, Kyle Dotson, opined that Ragusa's alleged asbestos exposure at Murphy was zero, or at worst, 0.003 f/cc-yr (fibers per cubic centimeter per year), which is less than the exposure anyone his age would expect to have from living in the ambient environment in major US Cities. (Dotson Report, Rec. Doc. 364-3, at 47-48). However, Plaintiff's experts opined that Ragusa's exposure from those processes at the Murphy refinery exceeded the permissible exposure limits and these exposures significantly contributed to his mesothelioma, contradicting the opinions of Murphy Oil's expert. (Baril Report, Rec. Doc. 475-9, at 40; Kraus Report, Rec. Doc. 475-10, at 13).

Murphy argues in its motion for summary judgment and in a separate motion to exclude (Rec. Doc. 478) that Ragusa's medical experts, including Dr. Kraus, should be excluded because they embrace the "everything above background theory." Considering the reasoning set forth in the preceding Order on Marathon's motion regarding the same topic, this argument is unavailing in Murphy's motion for summary judgment.

In light of the conflicting evidence regarding Ragusa's exposure at the Murphy refinery, Murphy Oil's motion for summary judgment **(Rec. Doc. 364)** is **DENIED**.

## PRODUCTS DEFENDANTS' MOTIONS

**1. International Paper Company's motion for summary judgment (Rec. Doc. 346)**

International Paper Company ("IP") moves for summary judgment arguing that Ragusa never worked with or around any product sold and/or manufactured by

IP. (Rec. Doc. 346-1, at 1). Ragusa sued IP alleging that its predecessor, U.S. Plywood, manufactured, sold, or distributed an asbestos-containing product he worked with at Avondale. *Id.* at 2. Ragusa testified that, while working for Avondale in his "first stint," the only asbestos-containing product he worked around was asbestos cloth. *Id.*; (Rec. Doc. 346-3, at 136-137). During his "second stint," at Avondale, Ragusa does not believe he was exposed to asbestos. *Id.*; (Rec. Doc. 346-3, at 124). Ragusa's "third stint" at Avondale was from September 12, 1975 to March 29, 1979. *Id.*

IP argues (1) that asbestos cloth has never been alleged to be associated with IP and (2) that US Plywood's sale of asbestos-containing FRDM ceased in mid-1974, so Ragusa was never exposed to its products while working at Avondale. (Rec. Doc. 346-3, at 1). IP contends that there is no evidence in the record identifying asbestos containing products manufactured or sold by IP that could be linked to Ragusa's exposures, because it stopped selling asbestos-containing materials to Hopeman before Ragusa worked around Hopeman employees. *Id.* at 4.

In opposition, Ragusa provides deposition testimony from Hopeman's corporate representative, Charles N. Johnson, in which he states that Hopeman was still purchasing asbestos-containing Micarts continuously from 1956-1976. (Rec. Doc. 459-10, at 3-4). However, the deposition testimony does not make clear whether Hopeman was purchasing this material "from Westinghouse or through U.S. Plywood." *Id.* While it may be true that this testimony does not establish that Hopeman Brothers purchased U.S. Plywood's asbestos-containing material, Ragusa

need only raise a genuine issue of disputed material fact to defeat IP's summary judgment.

Ragusa raised a genuine issue as to Ragusa's exposure to asbestos in materials sold by IP, so IP's motion for summary judgment **(Rec. Doc. 346)** is **DENIED.**

## 2. **Westinghouse's motion for partial summary judgment regarding turbines (Rec. Doc. 363)**

Paramount Global ("Westinghouse") moves for partial summary judgment regarding Turbines because (1) there is no evidence of Ragusa's exposure to asbestos attributable to Westinghouse turbines while he worked for B&G Crane at Entergy's Little Gypsy powerhouse, because there were no Westinghouse turbines at the site when he is alleged to have worked there and (2) his claims regarding exposure at Nine Mile Point powerhouse are preempted according to Louisiana Revised Statute 9:2772. (Rec. Doc. 363-1). Westinghouse cites to an affidavit of Douglas Ware, who contducted a "diligent an thorough search of Westinghouse's records, and found no records regarding the sale of turbines to Little Gypsy. (Ware Affidavit, Rec. Doc. 363-7). Mr. Ware was employed by Westinghouse from 1962 until his retirement in 2003, as a field service engineer, service manager, and director of service operations, focused on turbines and related services. *Id.* at 2. The affidavit states that no contracts, documents, design specifications, engineering drawings, or reports of any kind were located in Westinghouse's possession indicating that Westinghouse supplied turbines to the Little Gypsy plant. *Id.* at 3. The affidavit also states that it

is made following research Ware directed and is based on Ware's personal knowledge of the records. *Id.* at 2-3.

Avondale and Ragusa both oppose the motion. Avondale notes that Ragusa testified recalled removing covers from Westinghouse Turbines during his work at Nine Mile Point and/or Little Gypsy, and experts opined that this exposure was significant such that it was a substantial contributing factor in his mesothelioma (Rec. Doc. 425, at 4). Ragusa objects to the Ware affidavit and submits that the affidavit is outside his personal knowledge and is hearsay. (Rec. Doc. 472, at 2). Ragusa also argues that, notwithstanding Ware's affidavit, Ragusa's deposition testimony shows that he recalls working within five to ten feet from pipefitters and insulators at Little Gypsy who were scraping and brushing asbestos gaskets off of Westinghouse Turbines, and Ragusa breathed the dust. (Ragusa deposition, Rec. Doc. 472-4, at 8-9). Ragusa's experts have also opined that Ragusa was exposed to asbestos from gaskets and insulation on Westinghouse turbines and that these exposures significantly contributed to his mesothelioma. (Kraus Report, Rec. Doc. 472-11, at 13; Landreneau Deposition, Rec. Doc. 472-13, at 3-6).

Westinghouse also argues that Ragusa's claims are perempted by the peremptive period that bars all actions arising out of a defect in an immovable. Louisiana Revised Statute § 9:2772 provides, in relevant part, that:

> (A) No action ... arising out of an engagement of planning, construction, design, or building immovable or movable property ... shall be brought against any person performing or furnishing land surveying services, as such term is defined in [La. Rev. Stat. 37:682], including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or

observation of construction or the construction of immovables, or improvement to immovable property ...:

(1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

(1)(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

La. Rev. Stat. § 9:2772. The statute in effect at the time of Ragusa's exposures to asbestos barred actions "based on the allegedly defective design or construction of an immovable from being brought more than ten years after the completion of the work performed." *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992). "Louisiana courts hold that this provision applies to construction contracts but not to sales contracts." *Summerfield v. Harnischfeger Indus., Inc.*, No. 97-3683, 1998 WL 726080, at *4 (E.D. La. Oct. 13, 1998). In determining whether a contract is a construction contract or a sales contract, Louisiana courts generally weigh the economics of the transaction to determine whether the primary obligation is one "to give" or "to do." *KSLA–TV, Inc. v. Radio Corp. of Am.*, 501 F. Supp. 891, 894 (W.D. La. 1980). When the primary obligation is "to give," the agreement is a sales contract; when the primary obligation is "to do," the transaction is a construction contract. *Id.*

Westinghouse contends that its contract for turbines at Nine Mile Point power plant was a construction contract, rather than a sales contract, citing to another affidavit by Douglas Ware. (Rec. Doc. 363-1, at 6). The affidavit states that the Westinghouse turbines were planned, designed, and constructed specifically for Nine Mile Point, and the turbine generators were bolted down to their own special foundation to become permanent and integral parts of the power plant; (Ware

18

affidavit, Rec. Doc. 363-8, at 2-3); which seemingly demonstrates an obligation "to do." However, the affidavit also states that the turbine generators and turbines were delivered by Westinghouse for installation and operation at the facility after presumably being built off site; *id.* at 1; demonstrating that Westinghouse's primary obligation was to build the equipment off-site and then provide it to the powerplant. Despite the fact that the turbines were custom-built, weighing the economics of the situation, the primary obligation between Westinghouse and Louisiana Power & Light Company was one where Westinghouse would transfer ownership ("to give") of the turbines and generators to the power plants, despite Westinghouse's auxiliary obligations to also build and install them on site. Thus, the Court finds that the contracts were sales contracts rather than construction contracts, so the peremptive period in La. R.S. § 9:2722 does not apply to Ragusa's claims against Westinghouse in this case.

Because there is a material fact issue on whether Ragusa's exposure to Westinghouse's turbines was a substantial factor giving rise to Ragusa's mesothelioma and because the claims are not perempted, Westinghouse's motion for partial summary judgment **(Rec. Doc. 363)** is **DENIED.**

### 3. Riley Power's motion for summary judgment (Rec. Doc. 353)

Riley Power, Inc. ("Riley") moves for summary judgment, arguing that (1) Plaintiff's claims are perempted pursuant to La. R.S. § 9:2722 or (2) that because Plaintiff's experts should be prohibited from testifying pursuant to a pending *Daubert* motion, Plaintiff will be unable to prove causation. As the Court discussed in the order

denying Westinghouse's motion for summary judgment regarding the sale of its turbines to Little Gypsy and Nine Mile Point facilities, the peremptive period in La. R.S. § 9:2722 applies to contracts to build. Riley sold and erected boilers at the same facilities, and makes the same argument as Westinghouse in the preceding motion. Riley contends that its contracts were also for erecting the boilers on site. For the same reasons outlined above, the Court rejects this argument, and finds that the contracts at issue here are contracts of sale, so the 5-year peremptive period does not apply to Plaintiff's claims against Riley's regarding Riley's boilers.

Riley argues in the alternative that, in the absence of expert testimony it seeks to exclude in a *Daubert* motion, Plaintiff will not be able to prove specific causation, an essential element of his claim. The motion for summary judgment, however, does not point to any evidence showing an absence of material fact that Ragusa was exposed to asbestos-containing products attributable to Riley. In opposition, Ragusa provides deposition testimony from Ragusa demonstrating that he recalled using his crane at Little Gypsy and Nine Mile Point power plants to remove covers from boilers manufactured by Riley, working 5 to 10 feet from pipefitters scraping off asbestos-containing gaskets. (Rec. Doc. 474, at 2-3). Accordingly, there is a genuine issue of material fact regarding whether Ragusa was exposed to asbestos from Riley's boilers.

Because Ragusa's claims are not perempted by statute and because a material fact issue remains regarding exposure to asbestos from Riley's boilers, Riley's motion for summary judgment **(Rec. Doc. 353)** is **DENIED.**

20

**4. Westinghouse's motion for partial summary judgment regarding Micarta (Rec. Doc. 342)**

ViacomCBS Inc. ("Westinghouse") also moves for partial summary judgment regarding Micarta because there is no evidence of Ragusa's exposure to asbestos-containing a decorative laminate Fire Retardant Decorative Micarta ("FRDM" or "Micarta") used on the Zapata rigs on which Ragusa worked. Ragusa opposed the motion; (Rec. Doc. 440); and Westinghouse replied; (Rec. Doc. 567).

Ragusa testified in his deposition that he worked as a crane operator and hooker on the deck of one or more Zapata rigs toward the latter part of 1975 or in 1976, and while on the rigs, he was in the vicinity of employees of joiner contractor Hopeman Brothers, Inc., who were installing wallboard. (Rec. Doc. 342-1, at 2). Ragusa provides the deposition testimony of Bertram Hopeman that between the years 1964 and 1977, Hopeman Brothers Employees would cut and install Micarta-facing wallboard, which contained a fibrous component made of asbestos, on vessels. (Rec. Doc. 440, at 2). Ragusa testified in his deposition that, while he was on the deck five days a week, he would see Hopeman Brothers employees were "up there, and they were putting in the. . . walls for the quarters for the Zapata rigs, and. . . they were cutting it with a Skilsaw." (Ragusa Deposition, Rec. Doc. 440-3, at 3, 10-11). Ragusa also testified that the wall board fibers were "just flying everywhere, 'cause they didn't have any kind of protection" or vacuums surrounding the saws, so dust flew everywhere while Ragusa was working within five to ten feet of the Hopeman Brothers employees. *Id.* at 4, 12. Ragusa also provides expert opinions from an

industrial hygienist that if the Hopeman wallboards contained Micarta, that Ragusa was exposed to asbestos at levels that significantly increased his risk for developing mesothelioma. (Baril Report, Rec. Doc. 440-21, at 40).

Westinghouse argues that specifications and ordering documents confirm that all decorative laminates on the Zapata rigs were Consoweld, and not Micarta. (Rec. Doc. 567, at 1). Westinghouse cites to Hopeman Sketch Sheets for the Zapata vessels, many of which are illegible documents and copies of copies. (Rec. Docs. 342-6). Westinghouse contends that these documents "confirm that the only decorative laminates utilized in connection with the Zapata vessels were all Consoweld." (Rec. Doc. 567, at 2). The Court cannot grant summary judgment based on unreadable exhibits. Considering the evidence parties provided, a reasonable jury could conclude that it is more likely than not that Ragusa inhaled Westinghouse's asbestos fibers.

Because there is a material fact issue on whether Ragusa was exposed to Westinghouse's Micarta, Westinghouse's motion for partial summary judgment **(Rec. Doc. 342)** is **DENIED.**

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motions for summary judgment **(Rec. Docs. 359, 338, 382, 349, 364, 346, 363, 353, 342)** are **DENIED.**

New Orleans, Louisiana, this 29th day of March, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE