UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRANK P. RAGUSA, JR.

VERSUS

LOUISIANA GUARANTY
INSURANCE ASSOCIATION, ET AL.

CIVIL ACTION

NO. 21-1971

SECTION: "J"(5)

**ORDER AND REASONS**

Before the Court is a Daubert *Motion to Exclude the Testimony of Dr. Stephen Terry Kraus and Dr. Rodney Landreneau* **(Rec. Doc. 371)** filed by The Dow Chemical Company, Exxon Mobil Corporation, ExxonMobil Oil Corporation, Murphy Oil USA, Inc., Legacy Vulcan, LLC, CF Industries Nitrogen, LLC, Syngenta Crop Protection, LLC, Marathon Petroleum Company LP, Pharmacia LLC f/k/a Pharmacia Corporation f/k/a Monsanto Company, Riley Power, Inc., Rubicon LLC, Union Carbide Corporation, Bayer Cropscience, Inc., and Hexion Inc ("Defendants"). Plaintiff Frank P. Ragusa, Jr. opposes the motion; (Rec. Doc. 477); to which Murphy Oil and Exxon replied; (Rec. Doc. 561, 569). Considering the motion and legal memoranda, as well as the record and applicable law, the Court finds that the motion to exclude **(Rec. Doc. 371)** should be **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons. On July 16, 2021, Frank P. Ragusa, Jr. filed suit in Civil District Court for the Parish of Orleans, asserting Louisiana negligence and intentional tort

claims for asbestos exposure against numerous defendants. Huntington Ingalls, Inc. ("Avondale") removed the case to this Court on October 26, 2021.

## PARTIES' ARGUMENTS

Defendants seek to exclude the testimony of Plaintiff's radiation oncology expert Dr. Stephen Terry Kraus and thoracic surgery expert Dr. Rodney Landreneau. Defendants argue that, given the inadmissibility of the "no safe level of exposure" or "every exposure" theory, Dr. Kraus and Dr. Landreneau should be precluded from testifying at trial regarding any asbestos exposure from any particular product or at a particular jobsite. Defendants point to Dr. Kraus's deposition testimony as proof that he will rely on the "every exposure above background theory," specifically his answers to questions regarding whether there is a threshold level of exposure required to be a significant contributing factor for developing mesothelioma. Defendants also emphasize Dr. Landreneau's deposition testimony, including his answers to questions regarding his belief that any exposures below background will not cause mesothelioma. Defendants also argue that the doctors' expert reports do not rely on a quantitative or qualitative assessment and instead simply assume that each and every exposure to asbestos is above background and thus is a cause of Plaintiff's mesothelioma, so the doctors' specific causation opinions should be excluded.

Plaintiff responds by arguing that the doctors do not rely upon an above background theory, nor is it even their opinion that all of Plaintiff's exposures were significant. Plaintiffs note that Dr. Kraus specifically responded what the background

2

level of asbestos *is* provided by literature and the EPA, and he also testified that a substantial contributing factor is "a question of more than" anything above background. Dr. Kraus explained that he considers Plaintiff's exposure history to specific products and worksites as well as scientific literature discussing exposure concentrations to which Plaintiff was exposed. He testified that with the removal of asbestos-containing Garlock gaskets, literature shows exposure concentrations from 0.69 f/cc up to 144.2 f/cc, which is orders of magnitude above the OSHA and NIOSH permissible exposure limits, as well as above the background concentrations. He provided similar analysis for friction exposures from the brakes in Plaintiff's crane. Plaintiff argues that his opinion that these exposures are significant is not based on the fact that they are merely above background as Defendants suggest but are based on the fact that they are well above occupational health standards and above exposures that have been shown in the literature to cause disease.

As to Dr. Landreneau, Plaintiff argues that he also reviewed Plaintiff's exposures and the literature's descriptions of those exposures, and found it that Plaintiff's exposures exceeded the levels known to cause disease. Plaintiff argues that, although both doctors are aware of and referenced literature showing that short exposure durations and low exposure levels cause disease, Drs. Kraus and Landrenau did not reach their opinion that Plaintiff's exposures were significant just because they were above background.

**DISCUSSION**

Defendants move to exclude Dr. Kraus and Dr. Landrenau from testifying regarding the specific causation of Plaintiff's mesothelioma from specific products and worksites on the basis of reliability. A qualified expert witness may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in

every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

Under Louisiana law, a plaintiff claiming asbestos-related injury must prove "significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury." *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1091 (La. 2009). The plaintiff must show general causation—that a substance is capable of causing a particular injury or condition in the general population—and specific causation—that a substance caused a particular individual's injury. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). Expert testimony is required to establish causation, and a court may admit specific-causation evidence only after the plaintiff has produced admissible evidence on general causation. *Id.*

To show specific causation in a toxic tort case, a plaintiff must present "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999). The law does not require a plaintiff to show the precise level of his exposure to the toxic substance to hold a defendant liable. *Id.* at 671. More recently, the Fifth Circuit explained that, even if a plaintiff was only exposed to asbestos for a short period for an employer and had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial

5

factor in causing his mesothelioma. *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). In *Williams*, the fact that the plaintiff's expert opined that the plaintiff would have been exposed "frequently to above-average ambient background levels of asbestos" created a disputed issue of fact regarding whether Williams was exposed to respirable asbestos, thus reversing the trial court's summary judgment. *Id.* at 513.

In a previous case before this Court, the Court excluded Dr. Kraus's specific causation opinions in an asbestos case because, in that case, his opinions were an unreliable product of the "every exposure above the background" theory. *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556 (E.D. La. 2015). In that case, this Court found that Dr. Kraus did not rely on a sufficient qualitative evaluation of the plaintiff's history of asbestos exposures because Dr. Kraus simply testified that "if someone develops malignant mesothelioma and they have an asbestos exposure, that asbestos exposure has caused the malignant mesothelioma." Id. at 565. Notably, when asked whether, by including all exposures above background, Dr. Kraus would be including exposures that, in fact, did not cause the disease, Dr. Kraus answered "who knows? I can't answer that question of which ones are causative and which ones are not.... All I can say is they are all causative. Every incidence of asbestos exposure is causative." *Id.* The Court found that this reasoning simply recited the "every exposure" theory and did not provide a specific causation opinion that the plaintiff's exposure to a particular defendant's product was a cause of her mesothelioma, so Kraus's specific causation opinions were excluded. *Id.*

A motion seeking to exclude Dr. Kraus's and Dr. Landrenau's opinions as reliant on the "every exposure theory" was also before this Court in 2019 in *Savoie et al. v. Huntington Ingalls, et al.*, Civil Action No. 15-1220. In a hearing denying that motion, the Court noted that Dr. Kraus is a licensed medical doctor, has been treating mesothelioma patients since 1982, and is board certified in radiation oncology, which includes the diagnosis and treatment of cancers. (Hearing Transcript at 30, *Savoie et al. v. Huntington Ingalls, Inc., et al.*, No. 15-1220 (E.D. La. Apr. 3, 2019). The Court also stated that Dr. Kraus indicated he has reviewed scientific literature discussing the levels of exposure from Defendants' products and compared them to the occupational health standard to determine whether the exposure exceeded the standard levels. Ultimately, the Court found that Dr. Kraus adequately supported his methodology and cured the defects found in his specific causation opinions in *Vedros*.

In this case, Defendants argue that Dr. Kraus reverted back to his inadmissible methodology in *Vedros*. However, unlike in *Vedros*, Plaintiff has shown that Dr. Kraus's opinions are reliable, and Dr. Kraus's deposition testimony shows that he did not rely on the "everything above background" theory. Dr. Kraus reviewed Plaintiff's medical records and his deposition testimony regarding his exposure to Defendants' products and at Defendants' worksites and the methods used to disturb and manipulate the products. (Kraus Report, Rec. Doc. 371-4, at 1-2). Dr. Kraus states that he performed a qualitative cumulative assessment of Plaintiff's asbestos exposure by reviewing that deposition testimony, the reports of Gerard Baril and Dr.

James Millette, and scientific and medical literature confirming the high levels of occupational asbestos exposure sustained by Plaintiff. *Id.* at 7. In making his assessment, he cites to published studies regarding asbestos exposure and health outcomes as well as occupational exposure standards. *Id.* at 15-36.

Dr. Kraus's deposition testimony, including the excerpts Defendants provide, also shows that he is not reliant on the "every exposure" or "every exposure above the background" theories. After providing a summary of the scientific literature's various measurement of what constitutes "background" asbestos exposure, Dr. Kraus ultimately concludes: "But what I'm saying is, brief and low level are significant factors that are well recognized by the scientific community." (Rec. Doc. 371-1, at 8-9) (citing Kraus Deposition at 131). Asked "is the time that a person is exposed to [asbestos] significant?" Dr. Kraus responded "Yes" and proceeded to elaborate that the cumulative doses, individual's history, kind of occupational exposure and source of exposure all determine what is a "significant" exposure for an individual. *Id.* at 9. None of this testimony demonstrates to the Court that Dr. Kraus relied on a theory directly linking any exposure above background to a plaintiff's injuries. Dr. Kraus's testimony aligns with the Fifth Circuit's guidance on specific causation, which considers the frequency of exposure to doses above-background; *see Williams*, 23 F.4th at 513; and does not require a precise level of exposure; *see Curtis*, 174 F.3d at 670. Thus, the Court finds that Dr. Kraus's proposed testimony is based on sufficient facts and data and is the product of reliable principles and methods.

Defendants seek to exclude Dr. Landrenau for the same reasons. Dr. Landrenau is a board-certified thoracic surgeon with more than 30 years of experience in diagnosing and treating lung cancer and mesothelioma. Dr. Landrenau reviewed Plaintiff's medical records and his deposition testimony regarding his exposure to Defendants' products and at Defendants' worksites and the methods used to disturb and manipulate the products. (Landrenau Report, Rec. Doc. 477-16, at 5-6). Dr. Landrenau explicitly contradicts the "every exposure" theory in his report:

> Even though it is recognized in the literature that brief or low levels cause mesothelioma, the levels of exposure experienced by Frank Ragusa through his work were neither brief nor low level. The exposures exceeded contemporary standards. It is also recognized that as little as days, weeks, or months of exposure are sufficient to cause mesothelioma. However, Mr. Ragusa's exposure duration far exceeds these durations.

*Id.* at 10. He cites to published studies documenting the levels of asbestos exposure from various products and workplaces. *Id.* at 10-13. Additionally, like Dr. Kraus's deposition excerpts, Dr. Landrenau's deposition testimony does not reflect an agreement with the "every exposure above background" theory. Asked whether exposures below background will not cause mesothelioma, he testified that "I can't really exclude the fact that lower levels could have caused [mesothelioma]." (Rec. Doc. 371-1, at 10) (citing Landrenau Deposition, at 94). The Court finds that this testimony as well as Dr. Landrenau's report both align with the Fifth Circuit's guidance on specific causation and are based on sufficient facts and data.

Defendants also argue that Dr. Kraus's and Dr. Landrenau's testimony should be excluded because they are medical doctors, rather than experts in evaluating a specific occupational exposure. "An expert witness is not strictly confined to his area

9

of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (internal quotations omitted). As the Supreme Court noted in Daubert, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). These witnesses' proposed testimony is based on their knowledge of the harmful level of exposure to asbestos and evidence indicating that Plaintiff was exposed to such levels. Defendants can appropriately raise the issue regarding the bases and sources of their opinions on cross-examination.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' motion to exclude **(Rec. Doc. 371)** is **DENIED.**

New Orleans, Louisiana, this 30th day of March, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE